IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>DANILO VELASQUEZ, *et al*.<br><br>    Defendants.<br>                                    / | No. CR 08-0730 WHA<br><br>**ORDER DENYING DEFENDANT VELASQUEZ'S MOTIONS TO SUPPRESS (DKT NOS. 1998, 2293)** |

**INTRODUCTION**

In this RICO/VICAR prosecution, defendant Danilo Velasquez moves to suppress evidence seized from state warrants issued on May 13, May 26, and July 6, 2009, and federal warrants issued on July 2, July 7, and August 26, 2009 (Dkt. Nos. 1998, 2293). For the reasons stated herein, the motions are **DENIED**. Defendant Giovanni Hernandez moves to partially join in the motions (Dkt Nos. 2028, 2314). These motions to join are **GRANTED**.

**STATEMENT**

The third superseding indictment in this action charges defendants Danilo Velasquez and Giovanni Hernandez with, among other things, participating in a shooting that took place near the Daly City BART station. The search warrant applications submitted by the parties described the underlying events as follows. The shooting occurred on February 19, 2009, while the victims' car was stopped at a red light. Two men allegedly approached the victims' car and fired shots into the car, killing one and wounding two others. It was later determined that a .380-caliber

1   handgun and a 9mm firearm were used in the attack as .380-caliber shell casings, 9mm shell
2   casings, and live rounds of 9mm ammunition were found at the crime scene. Witnesses to the
3   shooting reported that the shooters fled the scene in a silver or white Honda with a license plate
4   number beginning with "4HOB". The morning after the shooting, a silver Honda with the license
5   plate number "4HAB465" was recovered in San Francisco. The recovered silver Honda had been
6   stolen from the Mission District two days before the shooting. The recovered car was believed to
7   be the getaway car used in the Daly City shooting.

During a traffic stop about two weeks after the shooting, SFPD officers recovered a Lorcin .380-caliber pistol from a stolen black Honda carrying Luis Herrera, Audenis Molina, Wilson Villlalta, and Julio Hernandez. The pistol was loaded with .380-caliber CBC ammunition — a Latin American brand of ammunition uncommon in the United States. This type of ammunition was found at the Daly City crime scene. SFPD Criminalist Mark Proia later concluded that the spent rounds and shell casings recovered from the Daly City crime scene matched the .380-caliber pistol recovered from the stop. All four individuals in the stolen black Honda were arrested as part of the traffic stop.

Each of the search warrants at issue in the instant motion sought evidence relating to the Daly City shooting and the search warrant affidavits included the aforementioned background and a description of the current state of the investigation. Each of these warrants are discussed below.

### 1.   STATE WARRANTS FOR CELL PHONE RECORDS.

On May 13, 2009, San Mateo Superior Court Judge Gerald J. Buchwald issued a warrant for Metro PCS and T-Mobile USA records from February 1, 2009, to March 5, 2009, for nine cell phone numbers including (415) 240-0634. Although (415) 240-0634 was registered to Mavy Lopez, the number was listed under the name "Arturo" and "Triste" in the cell phone address books of Luis Herrera and Wilson Villalta. It was believed that defendant Velasquez was going by the name "Arturo" and the gang moniker "Triste" at the time.

The search warrant authorized search and seizure of the following types of records: cell site activations (also known as "cell site location information" or "CSLI"); numbers dialed; incoming numbers; call durations; subscriber, ESN, and billing information; an engineering map of cell site

2

towers; signal strengths; SMART capability; billing information for other telephones on the same account; information regarding other types of services used by the subscriber; payment information; and other records relating to the subscriber. The search warrant did not authorize seizure of "content" records such as voicemail or text messages.

The search warrant affidavit was signed by Daly City Police Department Detective Gregg Oglesby. Among other things, the affidavit specified that SFPD Sergeant Nick Chorley provided Detective Oglesby with loose translations of a number of jail phone calls placed by Audenis Molina, Wilson Villalta, and Julio Hernandez after they were arrested. These translations had been completed by SFPD Sergeant Mario Molina, a native Spanish speaker. Sergeant Molina believed that a number of the jail calls referenced firearms that were used in the Daly City shooting. For example, eighteen hours after his arrest, Wilson Villalta called (415) 240-0634 and referred to "Suzie" and "Nina". The Oglesby affidavit explained that "Nina" was thought to refer to the .380-caliber firearm seized during the traffic stop and "Suzie" referred to a 9mm Uzi used during the Daly City shooting. The speakers on the calls discussed moving the Uzi to different locations to avoid its seizure by law enforcement.

On May 26, 2009, an almost identical warrant issued for cell phone records for four other telephone numbers. The search warrant affidavit was substantially similar except it also included description and analysis of CSLI obtained from the May 13 search warrant. The record does not indicate that any of the four numbers were associated with defendant Velasquez, however, one of the numbers was purportedly associated with defendant Giovanni Hernandez — (415) 504-4529. The search warrant affidavit was signed by Detective Oglesby and the warrant was issued by Judge Buchwald.

### 2.     FEDERAL WARRANT FOR 26 LEO STREET AND 172 KISKA ROAD.

On July 2, 2009, Chief Magistrate Judge James Larson issued a search warrant for three locations in San Francisco. Two of the three locations — 26 Leo Street and 172 Kiska Road — were alleged residences of defendant Velasquez. Defendant Hernandez allegedly resided at 172 Kiska Road. The warrant authorized the search and seizure of: indicia of gang membership and association; electronic media that could store indicia of gang membership; firearms, ammunition,

3

and indicia of firearms possession; knives, machetes, blades, clubs, maces, stun guns, and other weapons; evidence of violence; and indicia of residence, ownership, and/or control of the residences being searched.

The search warrant affidavit was signed by ICE Special Agent Valerie Paul. The Paul affidavit provided substantial detail regarding the investigation of the Daly City shooting, including much of the same information provided in the Oglesby affidavit for the state cell phone warrants. In addition to the information in the Oglesby affidavit, the Paul affidavit included more detail about the specifics of the jail calls to (415) 240-0634 and (415) 504-4529. In the affidavit, the former telephone number was identified as belonging to defendant Velasquez, whereas the latter telephone number was not attributed to any particular individual. Calls to the latter telephone number included a call wherein Luis Herrera suggested involvement in the Daly City shooting and requested that evidence from the crime be located and destroyed. The Paul affidavit also described the results of a review of CSLI which indicated that the users of (415) 240-0634 and (415) 504-4529 were in the vicinity of the shooting when it occurred and afterwards traveled to the location where the alleged getaway vehicle was abandoned. The Paul affidavit also contained further information about the shooting as provided by an informant — a member of the 20th Street Clique. Among other things, the informant identified defendant Velasquez as one of the shooters.

**3.    STATE WARRANT FOR 26 LEO STREET, 172 KISKA ROAD, AND TOYOTA TRUCK.**

On July 6, 2009, a state search warrant was issued by Judge Buchwald to search four locations in San Francisco — including the three locations authorized to be searched by the federal warrant issued the previous day. The state warrant also authorized the search of a light blue Toyota pick-up truck, license plate number 4V76316. The truck was registered to Sabrina Manzanares — the girlfriend of defendant Moris Flores. The warrant authorized the search and seizure of: any evidence of gang affiliation; any miscellaneous gun, gun pieces, ammunition, and other items relating to firearms; electronic storage media; indicia indicating possession of a silver Honda; DNA samples, fingerprints, and palm prints of Danilo Velasquez, Jaime Balam, Giovanni Hernandez, and Luis Herrera; and indicia showing dominion and control over the locations searched.

4

The search warrant affidavit was submitted by Detective Oglesby and was substantially the same as the search warrant affidavit that was submitted for the state warrants for cell phone records, except it included information seized as a result of those warrants. Notably, the Oglesby affidavit explained that a sequence of calls was placed throughout the day of the Daly City shooting from the cell phone allegedly belonging to defendant Velasquez to the cell phone allegedly belonging to defendant Hernandez. The calls increased in frequency prior to the shooting to one call every one to five minutes. The Oglesby affidavit described the pattern of cell phone use to be consistent with a "common tactic" in MS-13 drive-by shootings wherein two vehicles will effectuate the drive-by — the stolen getaway vehicle transports the shooters while the other vehicle carries individuals who conduct counter-surveillance and picks up the shooters once the stolen vehicle is dumped. The Oglesby affidavit explained that cell phone records revealed that the cell phones allegedly traveled together or close together to the crime scene, and then traveled back to where the alleged getaway vehicle was dumped after the shootings. This information purportedly demonstrated that defendants Velasquez and Hernandez were present for the shooting and were in either the car containing the shooters or were in the car conducting counter-surveillance for the shooters.

### 4. FEDERAL WARRANT FOR TOYOTA TRUCK.

On July 7, 2009, a federal search warrant was issued by Magistrate Judge Edward Chen to search the same truck for which the state warrant was issued the previous day. The federal warrant authorized the search and seizure of the same items listed in the federal warrant authorizing the search of 26 Leo Street and 172 Kiska Road. The search warrant affidavit was signed by Special Agent Paul. The affidavit explained that defendant Velasquez had been observed driving the truck on a number of occasions and was accordingly believed to have access to and control over the truck. The affidavit submitted in support of the federal warrant to search 26 Leo Street and 172 Kiska Road was attached and expressly incorporated by reference.

### 5. EXECUTION OF SEARCH WARRANTS AND SUBSEQUENT EVENTS.

On July 8, 2009, the Daly City Police Department and ICE — with the assistance of the SFPD — executed the federal and state search warrants for the residences and the truck.

5

On August 26, 2009, a federal warrant was issued by Magistrate Judge Bernard Zimmerman and was executed on September 1, 2009. The warrant has not been provided to the undersigned, and there is no further description of the warrant in the record except that it authorized DNA swabs to be taken from defendant Velasquez.

**ANALYSIS**

Defendant Velasquez seeks to suppress evidence seized as a result of the state and federal search warrants described above. Specifically, the following evidence is sought to be suppressed: (1) all cell phone records seized as a result of the state search warrants; (2) all evidence seized from 26 Leo Street pursuant to the federal and state warrants; (3) all evidence seized from the Toyota truck pursuant to the federal and state warrants; and (4) all evidence seized as a result of the federal warrant issued by Magistrate Judge Zimmerman on August 26, 2009. Defendant Hernandez partially joins in the motions and seeks to suppress evidence seized from (415) 504-4529 and 172 Kiska Road.

In order to challenge an unlawful search or seizure, a defendant has the burden to prove his legitimate expectation of privacy has been violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). Here, neither defendant has proffered a declaration establishing an expectation of privacy in the locations searched. This is in contravention of Criminal Local Rule 47-2(b), which requires sworn declarations or affidavits for motions presenting issues of fact. Denial of a suppression motion because the moving defendant failed to submit a supporting declaration has been affirmed by the court of appeals. *United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991).

Notwithstanding this failure, where the record offers some support for the proposition that the moving defendant had a reasonable expectation of privacy in a particular location, this order entertains the substantive challenge despite the lack of a sworn declaration. Where, however, the record provides no support for an expectation of privacy in a particular location or is contested, this order will not address the substantive challenge. The deadlines having passed, no further re-tries will be allowed.

6

1. **SEARCH OF CELL PHONE RECORDS PURSUANT TO STATE WARRANTS.**

    **A.    Defendant Velasquez.**

Defendant Velasquez's motion to suppress *all* cell phone records seized as a result of the state warrants is plagued by the fact that he has not demonstrated a reasonable expectation of privacy in the records. No sworn statement establishing a subjective expectation of privacy in any of the seized cell phone records has been submitted. With the exception of (415) 240-0634, the record contains absolutely no indication that defendant Velasquez had a subjective expectation of privacy in any of the phone numbers searched. And although the record contains some evidence that (415) 240-0634 was believed to have been used by defendant Velasquez because the number was attributed to "Triste" and "Arturo" in phone books of other cell phones, the number was registered to Mavy Lopez, not defendant Velasquez (S3000179, Dkt. No. 2293-1 at 11). Accordingly, even though there is some evidence that the number may have been in defendant Velasquez's possession and control, the record is not entirely clear on the issue.

In any event, even if defendant Velasquez had demonstrated a subjective expectation of privacy in (415) 240-0634, he cannot demonstrate that he had a *reasonable* expectation of privacy for Fourth Amendment purposes. There is no legitimate expectation of privacy in basic, non-content phone records — such as the telephone numbers of incoming and outgoing calls — which are by their nature voluntarily conveyed to the third-party service provider. *See, e.g., Smith v. Maryland*, 442 U.S. 735, 744 (1979); *United States v. Plunk*, 153 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000); *United States v. Lustig*, 555 F.2d 737, 747 n.10 (9th Cir. 1977). Although our court of appeals has not specifically addressed the extent to which this line of decisions applies to CSLI, its decision in *United States v. Pineda-Moreno* is analogous and governs the inquiry of the records specifically at issue here. *United States v. Pineda Moreno*, 591 F.3d 1212, 1217 (9th Cir. 2010).

In *Pineda-Moreno*, our court of appeals found that the use of a mobile tracking device to continuously monitor a vehicle's movements did not constitute a search because the only information obtained could have been obtained by simply following the vehicle. *Id*. at 1216–17. Similarly, CSLI obtained from the warrants at issue could have been obtained through physical

7

observation of defendant Velasquez. The privacy interests implicated here pale in comparison to those implicated in *Pineda-Moreno* — and even there the court of appeals found no reasonable expectation of privacy. The cell phone was not surreptitiously attached to an unwitting individual. Cell phones are voluntarily carried by their users and may be turned on or off at will. Additionally, CSLI is less accurate than information obtained by GPS tracking technology — the type of technology at issue in *Pineda-Moreno*. Admittedly, a distinction from *Pineda-Moreno* may be that cell phones can be carried to places that vehicles cannot travel — such as the interior of one's private residence. But defendant Velasquez does not argue that the records here revealed his movements while in private spaces. Nor is there any indication in the record that CSLI is capable of distinguishing movements within a discrete space such as a residence. Cell site activation records simply specify the cell tower the cell phone was closest to. Even in conjunction with other data, such as signal strength information, the records have not been shown to have the accuracy of GPS technology. Finally, the only information obtained here was *retrospective* in nature. No real-time or prospective information was sought.

      Defense counsel's assertion that "California law must be applied to the state warrants, despite the pendency of this case in federal court" is puzzling (Dkt. No. 2356 at 5). Neither decision cited by defense counsel for this proposition offers any support for this assertion. The *Cordova* opinion exclusively dealt with the assessment of the validity of a probation search condition imposed by state court and explicitly stated it was not addressing searches under the Fourth Amendment. *United States v. Cordova*, 650 F.2d 189, 191–192 (9th Cir. 1981). The *Elkins* opinion stated that a federal court is to rely upon federal law — not state law — in determining whether a search by state officers violated the Fourth Amendment. *Elkins v. United States*, 364 U.S. 206, 223 (1960). Certainly, the recognition of a privacy right by numerous states may provide insight into broad societal expectations of privacy. State law, however, is not conclusive of whether or not one has a reasonable expectation of privacy under the Fourth Amendment. As the Supreme Court has explained, "it is not the province of the Fourth Amendment to enforce state law." *Virginia v. Moore*, 553 U.S. 164, 178 (2008). Moreover, none of the California statutes cited in the papers or at the hearing even articulate a clear privacy interest

against *law enforcement* accessing the type of cell phone records at issue.

Even assuming a reasonable expectation of privacy was implicated by the search and seizure of the cell phone records related to (415) 240-0634, the Oglesby affidavit established probable cause to seize the records. Probable cause for issuance of a search warrant is established when the warrant application establishes that there is a fair probability that contraband or evidence will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Oglesby affidavit established a fair probability that the cell phone records of (415) 240-0634 would contain evidence pertaining to the Daly City shootings. For example, the affidavit recounted that Wilson Villalta — who was suspected to have involvement in the shooting — called the cell phone number from jail and through code words referenced the firearms used to perpetrate the shootings (S3000171, S3000173). These statements provided probable cause to believe that the same cell phone may have been used to make or receive other calls from individuals involved in the crime and that the individual with possession/control of the cell phone may have been involved in the shooting. Information about calls made and received around the time of the shooting, the rough locations of the individual possessing the phone at the time of the shooting, and who paid for the phone bills all could provide further insight into the Daly City shooting.

Finally, the request for a *Franks* hearing is rejected. To be entitled to a *Franks* hearing, a defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and the allegedly false statement was necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–156 (1978). The party moving for a *Franks* hearing must submit "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id*. at 171.

The contention that the Oglesby affidavit contained false statements because it stated that *references* were made to firearms during the jail calls — when the jail calls only used code words for firearms — is a toothless attack. The affidavit at no point asserted that actual names of the firearms (e.g. "Uzi") or the words "firearm" or "gun" were stated during the calls. Instead, the affidavit specifically noted that the speakers in the calls referred to "girl", "Suzie", and "Nina" and

1  explained that the officers believed these words were code words for firearms (S3000171,
2  S3000173).  Moreover, contrary to defense counsel's contention, the affidavit did not contain
3  "material omissions" because it described loose translations of the calls (Dkt. No. 1998 at 16).
4  The affidavit *explicitly* specified that the jails calls were "loosely translated."  This forthright
5  statement provided Judge Buchwald with clear notice of the nature of the translations and can
6  hardly be considered to be a material omission warranting a *Franks* hearing.  Furthermore, counsel
7  has provided no authority for the assertion at the October 19 hearing that there was a "material
8  omission" in the affidavit because transcripts of the jails calls were not attached.

9  It is up to the party requesting a *Franks* hearing to make an offer of proof.  Counsel did not
10 proffer any evidence — or even argue — that "girl", "Suzie", or "Nina" are not code words for
11 firearms or that the terms refer to an actual person, rather than firearms.  Nor did counsel challenge
12 the assertion that "girl", "Suzie", or "Nina" were stated during the jail calls.  Instead, counsel
13 asserts that in his review of three jail calls — which he could not be certain were the same calls
14 referenced by Detective Oglesby — he "heard no direct references to firearms" (Dkt. No. 1998 at ¶
15 7).  Nowhere does the Oglesby affidavit state, however, that any *direct* references to firearms were
16 made.  This "offer of proof" is a red herring and does not warrant a *Franks* hearing.  There are no
17 material facts that would be resolved by a *Franks* hearing and defendant has not made the
18 substantial preliminary showing required to obtain one.

19 **B.  Defendant Hernandez.**

20 Defendant Hernandez joins in the motion with respect to (415) 504-4529 — which was
21 searched pursuant to the state warrant issued on May 26, 2009.  The May 26 search warrant
22 affidavit was substantially similar to the May 13 search warrant affidavit, except it included
23 additional information retrieved as a result of the May 13 search warrant.  For the same reasons
24 that support rejection of defendant Velasquez's motion with respect to (415) 240-0634, the records
25 from (415) 504-4529 will not be suppressed nor is a *Franks* hearing warranted.  Furthermore, the
26 joinder motion expressly challenges Detective Oglesby's assertion that defendant Hernandez is
27 associated with (415) 504-4529.  Defendant Hernandez may not disavow association with the
28 number yet also assert an expectation of privacy sufficient to suppress records seized from it.

10

1  Additionally, even if he were able to establish a reasonable expectation of privacy in the number
2  — which he cannot — the inevitable discovery doctrine would bar suppression of the records.[1]  On
3  April 6, 2009, Magistrate Judge Zimmerman issued an 18 U.S.C. 2703(d) order authorizing the
4  search and seizure of the same records from (415) 504-4529 for an even broader period of time
5  than what was authorized by the state search warrant (Dkt. No. 2130-1).  Accordingly, the records
6  had already been obtained by the federal authorities through a means separate and apart from the
7  challenged state warrant.

### 2. SEARCH OF 26 LEO STREET PURSUANT TO STATE AND FEDERAL WARRANTS.

Defendant Velasquez failed to provide sworn confirmation that he had an expectation of privacy in 26 Leo Street.  Both the state and federal search warrant affidavits, however, point out his DMV address of record was 26 Leo Street, surveillance of the residence indicated that he had regular access to it, and the cell phone he was associated with was registered to that address.  This appears uncontradicted in the record and the government has not indicated that it disagrees with anything more than defendant Velasquez's failure to provide a sworn declaration.  Regardless, even assuming he had a valid expectation of privacy in 26 Leo Street, defendant Velasquez cannot prevail on any of his substantive challenges to the state or federal warrants authorizing the search.

#### A. State Warrant.

Defendant Velasquez's sole basis for challenging the search of 26 Leo Street is his claim that the search warrant affidavit was based on unlawful state cell phone warrants.  As discussed above, however, the cell phone records were not obtained through illegal searches.  Accordingly, this argument fails.

#### B. Federal Warrant.

Defendant Velasquez challenges the federal warrant on three grounds: (1) reliance on purpotedly unlawful state cell phone warrants; (2) reliance on "uncorroborated" information from

---

[1] Although this order does *not* resolve whether the inevitable discovery doctrine would apply with respect to the cell phone records attributed to defendant Velasquez, one matter requires clarification.  At oral argument, defense counsel for defendant Velasquez asserted that a prior order in this case held that law enforcement would not be permitted to obtain *any* cell phone records less than 180 days old without a search warrant.  This is incorrect.  That order only addressed the specific type of cell phone records challenged by defendant Moris Flores — "content" cell phone records (e.g. text messages and voicemail) governed by 18 U.S.C. 2703(a)  (Dkt. Nos. 2300, 2351).  Content cell phone records are not at issue here.

11

1  an informant of "unknown" reliability; and (3) overbreadth.

2  With respect to the first argument, as noted above, the state cell phone warrants were not
3  unlawful and therefore the federal warrant's partial reliance on materials obtained as a result of the
4  state cell phone warrants was permissible.

5  Next, the argument that the federal warrant lacked probable cause because it relied on
6  "uncorroborated" information received from an undisclosed informant fails because the
7  information obtained from the informant was in fact corroborated by recorded jail calls, cell phone
8  records, and other witnesses. *United States v. Ayers*, 924 F.2d 1468, 1478 (9th Cir. 1991) (finding
9  corroboration of details by independent police work indicates reliability of an informant).
10 Furthermore, the Paul affidavit clearly provided Chief Magistrate Judge Larson with the
11 background of the informant and the basis for the informant's knowledge — including negative
12 information about the informant such as his suspected membership in MS-13, his admission that
13 he was looking to shoot Norteños when he was arrested, his arrest while in the stolen car carrying
14 the suspected murder weapon, and that he had reached out to law enforcement to cooperate (Dkt.
15 No. 2293-1 at 8–10). Chief Magistrate Judge Larson was provided with enough information to
16 reasonably determine that the informant was sufficiently reliable. Moreover, even without the
17 informant's statements, the Paul affidavit established probable cause to search 26 Leo Street. For
18 example, the Paul affidavit detailed CSLI which suggested that defendants Velasquez and
19 Hernandez may have been present for the Daly City shooting and traveled back to the location
20 where the stolen silver Honda — the alleged getaway vehicle — was dumped (*id*. at 11–12). This
21 information clearly provided probable cause to believe that their residences or belongings would
22 contain further information about the shooting or information about their involvement in the
23 shooting.

24 The overbreadth and particularity challenge to the firearms provision in the federal search
25 warrant also fails. A warrant is not overbroad or insufficiently particular if probable cause exists
26 to seize all items of a particular type described in the warrant. *United States v. Spilotro*, 800 F.2d
27 959, 963 (9th Cir. 1986). Where the suspect firearm is clearly identified, a warrant provision
28 authorizing search and seizure of *all* firearms may be overbroad if probable cause is not

12

established to seize firearms besides the suspect firearm. *See Millender v. County of Los Angeles*, __ F.3d __, 2010 WL 3307491, at *6 (9th Cir. Aug. 24, 2010). The federal warrant and the Paul affidavit, however, not only established probable cause to search 26 Leo Street for the suspect firearm, but also established probable cause to search for a broader category of firearms and weapons. The Paul affidavit clearly explained that the federal warrant was sought to investigate a RICO conspiracy, in addition to the Daly City shooting. The Paul affidavit articulated that the alleged MS-13 racketeering enterprise was believed to retain instrumentalities of its crimes — such as firearms and other weapons — because continued retention of these instrumentalities enabled the enterprise to continue to exist and flourish despite death, deportation, or arrest of its members (Dkt. No. 2293-1 at 13). In support of this theory, the affidavit detailed past seizures of firearms from MS-13 members (*id*. at 6–7). Even though the federal warrant did not specify the types of guns sought to be seized, warrants may authorize a search for classes of generic items where the government is not "able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Spilotro*, 800 F.2d at 963. Here, firearms or weapons were sought because of the belief that MS-13 stored a broad array of firearms and weapons for use of the enterprise — more specific identification of these items was not possible. Accordingly, the firearms provision was not overbroad or insufficiently particular.

        **3.**      **SEARCH OF 172 KISKA ROAD PURSUANT TO STATE AND FEDERAL WARRANTS.**

Originally, defendant Velasquez sought to suppress evidence seized from 172 Kiska Road, but defense counsel subsequently specified that the motion with regard to 172 Kiska Road would be withdrawn so long as the government confirmed its sworn declaration that the only items seized from 172 Kiska Road were included in the photograph log it provided (Dkt. Nos. 2233-1, 2356 at 8). At the October 19 hearing, the government confirmed this statement and defense counsel accordingly withdrew the motion with respect to 172 Kiska Road. Defense counsel for defendant Hernandez, however, persists in the motion (Dkt. No. 2408).

Defendant Hernandez's challenge to the search of 172 Kiska Road fails. Defendant Hernandez has not demonstrated a reasonable expectation of privacy in 172 Kiska Road. True, the state and federal search warrant affidavits establish probable cause that he had access to 172 Kiska

13

Road and was familiar with it — namely because he was witnessed running into 172 Kiska Road on July 1, 2009, after shooting at individuals on the street and was thereafter arrested inside the residence. Even so, these facts do not show that defendant Hernandez had an expectation of privacy in the residence and the specific places searched within the residence. The federal affidavit noted that the telephone at 172 Kiska Road was answered by the mother of defendant Hernandez's girlfriend — so it may be that defendant Hernandez had regular *access* to the residence. But mere access does not translate to a reasonable expectation of privacy in it. As defendant Hernandez did not submit a sworn declaration to illuminate the issue, he has not met his burden to demonstrate a reasonable expectation of privacy.

Regardless, even assuming defendant Hernandez had a valid expectation of privacy in 172 Kiska Road, he cannot prevail on any of his challenges — made by way of joinder to defendant Velasquez's original motion — to the state or federal warrants authorizing its search. The search of 172 Kiska Road was conducted pursuant to the same state and federal warrants which authorized the search of 26 Leo Street. Accordingly, the challenge to the adequacy of the search of 172 Kiska Road is rejected for the same reasons that the challenge to the search of 26 Leo Street is rejected.

**4.    SEARCH OF TOYOTA TRUCK PURSUANT TO STATE AND FEDERAL WARRANTS.**

Defendant Velasquez failed to provide a sworn declaration establishing his expectation of privacy in the truck searched on July 8, 2009, and the record contains absolutely no indication that he had a reasonable expectation of privacy in the truck. The only evidence in the record tying him to the truck is the fact that he was observed driving the truck on four separate occasions. This alone does not establish that he had an expectation of privacy in the truck at the time of the search. Furthermore, the truck was not registered in his name — it was registered to Ana Manzaneres.

Regardless, even if defendant Velasquez demonstrated a reasonable expectation of privacy in the truck, the search of the truck was lawful for the same reasons that the search of 26 Leo Street and 172 Kiska Road were lawful. The search of the truck was authorized in the same state search warrant authorizing the search of 26 Leo Street and 172 Kiska Road. Similarly, the federal

14

1 search warrant and affidavit underlying the search of 26 Leo Street and 172 Kiska Road was
2 attached and entirely incorporated by reference into the federal search warrant for the truck.

### 5. FEDERAL WARRANT ISSUED BY MAGISTRATE JUDGE ZIMMERMAN.

Although defendant Velasquez seeks to suppress DNA swabs and other items seized as a result of the federal search warrant issued by Magistrate Judge Bernard Zimmerman, a copy of the warrant was not submitted to the undersigned. Additionally, the warrant was not described with any specificity, nor were any specific arguments made regarding why items seized pursuant to the warrant must be suppressed. Accordingly, the motion is rejected as the undersigned has not been provided with adequate information to rule on it.

### 6. LATE PRODUCTION OF FEDERAL WARRANTS.

Although the government's late production of the federal warrants to defendant Velasquez was less than ideal, there is no indication that this late production was anything more than an mistake remedied immediately upon its discovery. Indeed, defense counsel do not contend that the government deliberately withheld the federal warrants from production (Dkt. No. 2293 at 12). Pursuant to the parties' request, the undersigned allowed for new motions to be filed and continued the hearing on all motions for over a month past the original hearing date (Dkt. No. 2178). Although the discovery mishap still may have caused some undesirable inefficiencies, preclusion of evidence would be an extreme sanction where there has been no willful failure to comply with discovery rules. Furthermore, the government's production cover letter to defense counsel — sent almost a year ago — clearly indicated that the production was intended to include federal search warrants, bearing control numbers S3000001-142 (Dkt. No. 2130-4 at 4). Defense counsel accordingly had notice that federal search warrants were in the government's possession. Defense counsel could have sought follow-up on the issue well before the suppression motions were due, but did not.

//
//
//
//

15

**CONCLUSION**

For the reasons stated herein, the motions to suppress as presented by defendant Velasquez's motions and defendant Hernandez's joinder motions are **DENIED**.

**IT IS SO ORDERED.**

Dated: October 22, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE