IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANILO VELASQUEZ, *et al.*<br><br>Defendants.<br>_____ / | No. CR 08-0730 WHA<br><br>**MEMORANDUM OPINION RE:**<br>**EXCLUSION OF DR. ALLAN BURNS**<br>**AND LIMITATION OF TESTIMONY**<br>**OF DR. GRETCHEN WHITE** |

**INTRODUCTION**

The undersigned granted the government's motion to exclude defendant Danilo Velasquez's proposed "cultural defense" expert testimony and expert testimony barred by Rule 704(b) (Dkt. No. 5296; Tr. 1745). As previously stated, Dr. Allan Burns (the cultural expert) will be excluded from testifying and Dr. Gretchen White (the mental condition expert) will be precluded from offering "cultural defense" testimony and opinions regarding whether defendant Velasquez had the mental state constituting an element of any of the crimes charged or any defenses thereto. This memorandum opinion explains the rationale for the exclusion and details the contours of Dr. White's permissible testimony.

**STATEMENT**

After protracted litigation regarding the defense's repeated failure to comply with the disclosure deadlines for its "mental condition" experts, the undersigned permitted defendant Velasquez to submit late Rule 16 expert disclosures (Dkt. No. 5218). Defendant Velasquez

accordingly submitted expert disclosures for the following: (1) psychologist Dr. Gretchen White; (2) anthropologist Dr. Allan Burns, and (3) neuropsychologist Dr. Shelley Peery.

## ANALYSIS

### 1. "CULTURAL DEFENSE" TESTIMONY

Defendant Velasquez sought to present "cultural defense" expert testimony through Dr. Burns and Dr. White to support his theory that defendant did not have the requisite mental state to commit the charged crimes. The proposed testimony is inadmissible under Rule 403. Expert testimony based on cultural stereotyping may be excluded under Rule 403 as irrelevant or unhelpful to resolving an issue of guilt. *See, e.g., United States v. Verduzco*, 373 F.3d 1022, 1034 (9th Cir. 2004) (affirming exclusion of a sociologist who sought to provide "cultural perspective" for the defendant's duress defense); *United States v. Sayakohm*, 186 F.3d 928, 936 (9th Cir. 1999) (affirming exclusion of Laotian culture expert's testimony as not helpful to jury in resolving any issue of guilt); *United States v. Rubio Villareal*, 927 F.2d 1495 (9th Cir. 1991), *amended on other grounds in* 967 F.2d 294 (9th Cir. 1992) (affirming exclusion of expert who would have testified regarding the "lifestyles" and practices of Mexicans in lower socio-economic brackets). Although testimony based on cultural practices or tendencies may be admissible in those instances where the testimony is *directly relevant* to an issue in the case, as further detailed below, defendant Velasquez has failed to articulate how the proposed "cultural defense" testimony of Dr. Burns and Dr. White would be directly relevant to any issue.

#### A. Dr. Allan Burns

Dr. Burns' opinions address the general social, cultural, and political conditions of the Guatemalan region in which defendant Velasquez was allegedly born and raised and the purported practices and beliefs of defendant Velasquez's indigenous Mayan group (Dkt. No. 5233-2). There is no indication, however, that the conditions, views, or practices were actually experienced by defendant Velasquez. As Dr. Burns' report acknowledges, the opinions are based on his own *personal* research and living experiences in Guatemala, Southern Mexico, and the United States (Dkt. No. 5233-2 at 1). Indeed, Dr. White's examination of defendant Velasquez revealed that defendant Velasquez was *culturally isolated* so that he was unaware of

the broader social/political context of interest to Dr. Burns. For example, although Dr. Burns opines that individuals were being killed in defendant Velasquez's region due to political turmoil, Dr. White learned that defendant Velasquez believed that the killings he witnessed were because the deceased had "possessed forbidden religious or cultural knowledge" (Dkt. No. 5223-1 at 7). This illustrates how the proposed generalized "cultural" opinions lack probative value in this case and are inapplicable to defendant Velasquez.

In any event, even if defendant Velasquez did experience the political, cultural, or social phenomena described by Dr. Burns, there is no indication that they had any impact on defendant Velasquez's mental condition at any time relevant to the charges. Even assuming that Dr. Burns' ultimate conclusion is true — that defendant Velasquez's personal experiences parallel the experiences of young children who were "abandoned, neglected, and lost to their own and other worlds in Guatemala during a protracted period of political and social turmoil" — this conclusion has no relevance to any issue in our case. Whether or not defendant Velasquez experienced suffering that other children from his region similarly experienced is irrelevant to any issue of guilt or any defense to the crimes charged.

Not only do Dr. Burns' opinions lack probative value, but the opinions will confuse the jury and run a substantial risk of unfair prejudice. For example, Dr. Burns opines that:

> Stereotypes [in Guatemala] abound about indigenous people: including that they are promiscuous with no morals or values, slow and backward, holdovers from a long-ago history, and dirty. These overt stereotypes have led to unprosecuted crimes against indigenous people at the individual and group level.

(Dkt. No. 5233-2 at 5). The opinion that some indigenous people are viewed with contempt abroad and are subject to persecution does not impact any issue in our case. But the description of the plight of persecuted indigenous populations will confuse the issues. The opinion may inflame the jury and hinder its ability to objectively consider whether the government has proven its case against defendant Velasquez. At best, the presentation of such opinions will waste time.

After examining Dr. Burns' expert disclosures, the undersigned can locate no opinion that is not similarly inextricably intertwined with generalizations about Guatemalan, Mayan, and

3

Mam culture or that is not simply repetition of hearsay provided from defendant Velasquez. Dr. Burns' proposed testimony must be accordingly excluded in its entirety under Rule 403.

### B. Dr. Gretchen White

The "cultural defense" aspects of Dr. White's proposed testimony are similarly excluded and Dr. White may not testify regarding the purported nature or attributes of defendant Velasquez's "culture." Specifically, Dr. White may not offer her opinions that:

- The culture in which [defendant Velasquez] was raised is very secretive, suspicious of outsiders, and harbors a strong belief that witchcraft causes ailments and misfortune. These attitudes were compounded by the especially violent period of the war between the guerrilla forces and Guatemalan army that took place in his area between 1980 and 1996 — from the time of his birth until the time he left the country.

- In Guatemala, the indigenous people are severely discriminated against and brutalized. It is the closest to a caste system in the Western hemisphere. Mayan men are seen as very passive by members of the dominant Hispanic culture and often taunted as homosexuals.

As with the excluded testimony of Dr. Burns, the aforementioned opinions and any other generalized opinions regarding defendant Velasquez's culture will not be allowed under Rule 403. Defendant Velasquez has not offered any explanation as to how the opinions are relevant to any issue in the instant case and the opinions are not necessary to explain Dr. White's diagnosis that defendant Velasquez suffers from: (1) major depression, recurrent, with psychotic features; and (2) post traumatic stress disorder.

### 2. RULE 704(B)

Portions of Dr. White's proposed testimony also run afoul of Rule 704(b)'s prohibition of ultimate issue expert testimony on a defendant's *mens rea*. Rule 704(b) provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

In violation of this rule, defendant Velasquez seeks to introduce testimony by Dr. White that he did not have the requisite mental state to knowingly and intentionally join or participate in the charged conspiracies and/or criminal enterprise. For example, Dr. White would testify that "Mr. Velasquez would be unable to form the intent to join a conspiracy or participate in an enterprise,

4

criminal or not" and "it is extremely unlikely that he would be capable of forming the mental state necessary to knowingly and voluntarily enter into the alleged gang conspiracy" (Dkt. No. 5233 at 9).  These opinions are impermissible and are excluded under Rule 704(b).  Similarly, Dr. White may not offer conclusory opinions tantamount to the same thing.  To that end, Dr. White's opinion that "any participation in [the charged crimes] would have been based on a very limited grasp on his role in the events, as opposed to an understanding of the entire gestalt of the activity" will not be allowed nor may any variants of the opinion be allowed.

### 3. HEARSAY

While Dr. White's opinions may be based on hearsay if an expert in her field would reasonably rely upon such hearsay, Dr. White may not simply transmit the hearsay to the jury. Although the government has not sought a ruling precluding transmission of hearsay, this order notes that Dr. White's report is rife with such hearsay and presumes that defendant Velasquez will not seek to present this inadmissible testimony to the jury.

### CONCLUSION

As explained above, Dr. Burns will be not be permitted to testify as his opinions are based on cultural stereotypes and generalizations that have no probative value in this case.  Dr. White may testify but must refrain from offering testimony based on stereotypes and/or generalizations of Guatemalan, Mayan, Mam or any other culture and may not assert whether defendant Velasquez had the requisite mental state constituting an element of the offenses charged or defenses thereto.

**IT IS SO ORDERED.**

Dated:  November 14, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE