IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANILO VELASQUEZ, *et al*.<br><br>Defendants.<br>_____/ | No. CR 08-0730 WHA<br><br>**ORDER RE DEFENDANT VELASQUEZ'S MOTION TO DISMISS FOR GRAND JURY MISCONDUCT** |

**INTRODUCTION**

Defendant Danilo Velasquez moves to dismiss the third superseding indictment, alleging grand jury misconduct. In the alternative, defendant Velasquez seeks to strike overt acts 111, 112, and 113 in Count One of the indictment. The motion is **DENIED**.[1]

**STATEMENT**

There is no doubt that lies under oath were told to the grand jury. The question is whether this particular movant, defendant Velasquez, can capitalize on it. On September 2, 2009, ICE Special Agents Alicia MacDonald, Ben Horton, and Raul Cano met with Alexander Izaguirre (Velasquez Exh. B). Mr. Izaguirre had been housed in the same pod as defendant Luis Herrera and was cellmates with government cooperating witness Wilson Villalta. During the

---

[1] Although the motion is couched as a "second" motion to dismiss for grand jury misconduct, the motion is the first motion to dismiss filed by defendant Velasquez. An earlier motion to dismiss was filed by defendant Luis Herrera and defendant Velasquez sought to join in that motion. The joinder motion was denied for failure to provide a sufficient factual basis as to how the motion applied specifically to defendant Velasquez (Dkt. No. 5335). The instant motion is a fresh try.

meeting, Mr. Izaguirre stated that he was in the same room at the San Bruno jail with defendant Herrera and Mr. Villalta when defendant Herrera confessed to being involved in the Daly City homicide, after a news story aired regarding the homicide. As part of this "confession," defendant Herrera purportedly identified "Triste" as one of the two shooters ("Triste" is defendant Velasquez's alleged gang moniker).

On September 3, 2009, Agent MacDonald relayed Mr. Izaguirre's story to the grand jury (Velasquez Exh. I). Specifically, Agent MacDonald testified that Mr. Izaguirre told her that one or two months after the homicide, defendant Herrera had told him and Mr. Villalta that he was the driver in the Daly City homicide and that "Triste" was one of the shooters. "Triste" was identified to the grand jury as defendant Velasquez.

Similarly, on September 10, 2009, Agent Moore testified that a "source" indicated that defendant Velasquez was involved in the Daly City homicide and that defendant Herrera claimed involvement in the shooting after watching a news story on the homicide (Velasquez Exh. C at 7, 14). Unlike Agent MacDonald's testimony, Agent Moore's testimony did not make clear whether the "source" he was referring to was Mr. Villalta or Mr. Izaguirre. The government asserts in its opposition, however, that the statement identifying defendant Velasquez as being involved in the shooting was dependent on information received from Mr. Villalta, not Mr. Izaguirre (Opp. 4).

On September 24, 2009, Mr. Izaguirre repeated his story regarding defendant Herrera's "news story" confession to the grand jury (Velasquez Exh. D). That same day, the third superseding indictment was returned, which charged defendant Velasquez with RICO conspiracy (Count One), conspiracy to commit murder in aid of RICO (Count Two), conspiracy to commit assault with a dangerous weapon in aid of RICO (Count Three), and possession of a firearm in aid of Counts One, Two, and Three (Count Four). This was the first indictment to include defendant Velasquez and defendant Herrera as defendants.

The day after his testimony before the grand jury and the return of the third superseding indictment, Mr. Izaguirre reiterated his story to ICE Agents MacDonald and Moore (Velasquez

Exh. E). But one week later, Mr. Villalta — who Mr. Izaguirre had testified was present for defendant Herrera's supposed confession — admitted to ICE agents that Mr. Izaguirre had not been present for any such "confession." (Velasquez Exh. F).[2] Despite this admission, Mr. Izaguirre was not detained for perjury and the prosecutors did not notify defense counsel, the grand jury, or the Court of the perjury until October 2011. As no action was taken against Mr. Izaguirre for his perjury, Mr. Izaguirre was deported in April 2011 — almost a year and a half after the perjury was discovered and six months before the instant trial.

On October 17, 2011, the government produced to the defense the ICE investigation reports that summarized the ICE interviews of Mr. Izaguirre that had occurred over two years before (Schwartz Decl. ¶ 8).[3] A few days later, defense counsel learned that Mr. Izaguirre had testified before the grand jury and that the government considered Mr. Izaguirre's testimony to have been perjurious (Schwartz Decl. ¶ 4). Despite this perjurious testimony, as stated, Mr. Izaguirre was not prosecuted and was deported in April 2011.[4] Again, as stated, the grand jury, defense counsel, and the Court were not notified prior to this deportation and it does not appear that there was any attempt by ICE or the prosecutors to delay the deportation until after the instant trial.

After receiving the ICE reports regarding Mr. Izaguirre, defendant Herrera learned that Mr. Izaguirre had been deported. This was only a few days before the commencement of the trial. Based on the perceived unavailability of Mr. Izaguirre, defendant Herrera filed a motion to dismiss, which defendant Velasquez joined. The motion, however, was withdrawn upon discovery that Mr. Izaguirre was back in federal custody in the Northern District of Arizona for

---

[2] Approximately two years later, Mr. Villalta admitted to ICE agents that he and Mr. Izaguirre had conspired to concoct the story hoping to secure benefits from the government (Velasquez Exh. G).

[3] It is unclear when the investigation report recounting the meeting with Mr. Villalta on October 2, 2009 — wherein Mr. Villalta stated Mr. Izaguirre was not present for the "news story" confession — was produced to the defense. There has been no contention by the defense that the report was produced only shortly before trial.

[4] Defendant Herrera's motion to dismiss suggested that the investigator for defendant Velasquez had sought to interview Mr. Izaguirre prior to his deportation but was not permitted to do so by the jail.

3

1    his August 2011 attempt to illegally re-enter the country (Dkt. No. 5266).  Mr. Izaguirre was
2    immediately ordered to be transferred to this district and the defense has now had the
3    opportunity to meet with Mr. Izaguirre both before and after his transfer to this district.
4        Before oral argument on the motion could be heard, defendant Herrera pleaded guilty.
5    Counsel for defendant Velasquez accordingly re-packaged defendant Herrera's motion and
6    submitted it for the undersigned's consideration.  Almost simultaneous with the briefing and
7    oral argument on the instant motion, defense counsel moved for judicial use immunity for Mr.
8    Izaguirre, as Mr. Izaguirre's counsel indicated he would assert the Fifth Amendment privilege if
9    called to testify.  After interviewing Mr. Izaguirre, however, counsel for defendant Velasquez
10   withdrew the motion as he decided not to call Mr. Izaguirre as a witness for the defense.

**ANALYSIS**

12       The motion presents a troubling scenario of the presentation of perjured testimony to the
13   grand jury by a government witness and the lack of a curative response.  Worse, once the perjury
14   was discovered, the government deported the perjurer and, for a time, he was out of defense
15   subpoena range.  This is unlike other cases where a witness is unwittingly deported because the
16   immigration authorities were unaware of the witness' significance to an ongoing criminal matter.
17   Here, the same agency that investigated the case and that has been working side-by-side with the
18   prosecutors deported the perjurer.  ICE agents (who have been sitting at counsel table in the
19   instant trial and during the previous April 2011 trial) and a government prosecutor was informed
20   over two years ago that Mr. Izaguirre's testimony was perjurious at least in some respects
21   (Velasquez Exh. F).  Despite this, the government took no action against Mr. Izaguirre prior to
22   his deportation.  Nor did it inform any other parties about the perjurious testimony.  But for the
23   fortuity of Mr. Izaguirre illegally re-entering the country only four months after his deportation,
24   the defense would have been denied the opportunity to question Mr. Izaguirre regarding the
25   statements he made to the agents and the grand jury and to evaluate how effectively he could
26   impeach a key government witness.  Although the happenstance of Mr. Izaguirre's renewed

1    presence in this country alleviated due process concerns, the whole matter raises a question of
2    how the government could have allowed such a situation to come about.

3    Even so, there is no basis on which to dismiss Counts One to Four of the indictment.
4    Defendant Velasquez seeks dismissal due to the presentation of perjured testimony to the grand
5    jury, relying on *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974). Although our
6    court of appeals in *Basurto* found dismissal of an indictment was appropriate where the
7    prosecutor failed to immediately notify the court and grand jury upon discovering that perjured
8    testimony was presented to the grand jury, this aspect of *Basurto* was found to be *dicta* in
9    *United States v. Bracy*, 566 F.2d 649, 655 (9th Cir. 1977). In *Bracy*, our court of appeals
10   emphasized that *Basurto*'s disclosure requirement was more accurately a requirement that the
11   perjured testimony be disclosed in time for defense counsel to be able to confront the relevant
12   witness with the perjured testimony — not a hard-and-fast rule that dismissal is indicated each
13   time perjury is not immediately disclosed. Accordingly, our court of appeals found no error
14   where the government disclosed the perjured material with enough time for the defense to
15   utilize it in cross-examination (the government had disclosed the material the day before trial).
16   In other words, our court of appeals found that without prejudice, dismissal was not warranted.

17   Here, the perjured material — as well as all related material — was disclosed with time
18   for defense counsel to process the material to confront Mr. Villalta. Moreover, on direct
19   examination, the government itself fronted the lie through Mr. Villalta so that the jury was made
20   aware that Mr. Villalta and Mr. Izaguirre had lied in the past. And, as stated previously,
21   defense counsel interviewed Mr. Izaguirre and elected not to call him at trial. There was no
22   prejudice warranting dismissal.

23   Additionally, decisions after *Basurto* have emphasized that courts must inquire whether
24   there was sufficient non-perjurious testimony presented to the grand jury to support the
25   indictment. *See, e.g., United States v. Spillone*, 879 F.2d 514, 524 (9th Cir. 1989); *United*
26   *States v. Claiborne*, 765 F.2d 784, 791 (9th Cir. 1985), *abrogated on other grounds*, *Ross v.*
27   *Oklahoma*, 487 U.S. 81 (1988). If so, then dismissal of the indictment is unwarranted. After
28

5

putting aside any testimony by Mr. Izaguirre or testimony based on his statements, there was sufficient evidence presented to the grand jury to indict defendant Velasquez for Counts One, Two, Three, and Four.

Specifically, defendant Velasquez was linked to the Daly City homicide through other means than Mr. Izaguirre. For example, Agent Moore testified before the grand jury to cell site records for defendant Velasquez's cell phone number which showed his cell phone was in contact with the cell tower that was within a few blocks of the Daly City BART station at the time of the shootings and later contacted a cell tower near where the stolen vehicle used in the homicide was recovered (Velasquez Exh. C at 22–27). Agent Moore further testified that a "source" — which the government's motion identifies as Mr. Villalta — identified defendant Velasquez as being involved in the Daly City shootings (Velasquez Exh. C. At 7–8; Opp. 4). Agent MacDonald also testified that after defendant Herrera and Mr. Villalta were arrested with one of the firearms used in the Daly City homicide, they called defendant Velasquez and during the call defendant Velasquez sounded upset because of difficulties in finding out where the "Uzi" — the other firearm used in the homicide — was located.[5]

Moreover, unlike defendant Herrera, defendant Velasquez was not charged directly with the Daly City shootings. Evidence of the incident was used to indict defendant Velasquez for the conspiracy counts and related firearms count and was not the only evidence on which the indictment depended on. As evidenced by the numerous non-Daly City overt acts listed in the third superseding indictment that specifically called out defendant Velasquez, the grand jury found that defendant Velasquez had participated in the conspiracy well beyond the Daly City shootings (*see, e.g.,* overt acts 14, 19, 21, 23, 45, 53, 70, 102, 104). And, the grand jury was presented with specific evidence of defendant Velasquez's involvement in the conspiracies. For example: Agent Moore testified that cooperating witnesses had identified defendant Velasquez

---

[5] There were two firearms allegedly used in the Daly City shootings: a .380-caliber firearm and a 9mm-caliber firearm. The .380-caliber firearm was recovered when defendant Herrera and Mr. Villalta were arrested, but the 9mm-caliber firearm was not recovered. Uzis are 9mm-caliber firearms.

was a leader of MS-13 (Velasquez Exh. C at 17); Agent Benjamin Horton testified that several hours after defendant Velasquez was shot, two individuals were shot and killed by defendant Erick Lopez as retaliation for the shooting of defendant Velasquez (Gov't Exh. A); and Nancy Lopez, the mother of defendant Lopez (the shooter in the aforementioned retaliatory shooting), testified to the grand jury that defendant Velasquez left money for defendant Lopez after defendant Lopez had been arrested for the shooting (Gov't Exh. B).

There was sufficient non-perjurious testimony presented to the grand jury to support Counts One, Two, Three, and Four as to defendant Velasquez. Those counts will not be dismissed nor will the overt acts relating to the Daly City shootings be stricken from the indictment.

**CONCLUSION**

Although this order concludes dismissal of the indictment is not warranted, it is a troubling scenario when prosecutors in our federal building — even if inadvertently — allowed a detainee who was known to have perjured himself to be deported without notifying defense counsel or investigating whether criminal charges were warranted. It was entirely foreseeable that the defense would ordinarily want to call the detainee as a witness to impeach the government's key witness (and would have done so here save for the government's "fronting" the issue in the direct examination of the key witness). At a minimum, this scenario deserves to be examined by our United States Attorney herself. Therefore, a copy of this order will be sent to United States Attorney Melinda Haag by the Clerk. It will be sufficient that our United States Attorney is made aware of the circumstances and it is left to her good judgment whether and to what extent any follow-up should be made.

**IT IS SO ORDERED**.

Dated: November 21, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE