IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION RE ADMISSION OF CERTAIN COCONSPIRATOR STATEMENTS** |
| DANILO VELASQUEZ, *et al*. | |
| Defendants. | |
| / | |

In this RICO/VICAR trial, a number of government witnesses testified to statements allegedly made by defendant Danilo Velasquez and other alleged conspirators. Prior rulings have explained why certain objected-to statements did or did not qualify as coconspirator statements under Rule 801(d)(2)(E) (*see, e.g.*, Dkt. No. 5282). Nevertheless, throughout the course of trial, there have been occasions where the Court did not have the opportunity to articulate in detail the specific grounds for ruling that a particular statement was or was not admissible as a coconspirator statement. This memorandum opinion seeks to explain the bases for those rulings not already explained.

A statement is admissible under Rule 801(d)(2)(E) if: (1) a conspiracy existed when the statement was made; (2) the defendant had knowledge of and participated in the conspiracy; and (3) the statement was made in furtherance of the conspiracy. *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006).

1    Evidence presented by the government at trial established by a preponderance of the
2 evidence that the conspiracies alleged in Count One, Two, and Three existed and the offered
3 statements were made during the course of these conspiracies.[1]  *United States v. Bourjaily*, 483
4 U.S. 171, 175 (1987); *United States v. Peralta*, 941 F.2d 1003, 1006–07 (9th Cir. 1991).  The
5 government also established by a preponderance of the evidence that defendant Velasquez and
6 the declarants at issue were members of the charged conspiracy.  Consequently, the remaining
7 issue for the Court was whether each statement was *in furtherance* of the conspiracy.  This
8 memorandum opinion explains why, as implicitly found earlier, certain statements were or were
9 not in furtherance.

10    Witness Abraham Martinez testified that after he arrived at a hospital to visit "Triste" —
11 who had just been shot — "Magic" and "Slow" told him that Norteños were responsible for
12 shooting Triste (Tr. 1122–24).[2]  This statement was in furtherance of the conspiracy because it
13 sought to mobilize and motivate retaliation for the shooting of a fellow gang member and sought
14 to reiterate and reinforce the gang's common purpose of attacking rivals.  As Witness Martinez
15 testified, the statement was made in the context of "Slow" instructing fellow gang members that
16 they had to "put in work" for the gang.[3]  The statement also served to reassure fellow conspirators
17 that the gang would mete out strong retaliation against those who harmed its members.

18    Witness Jose Espinal testified that in February 2008 he wanted to get jumped into MS-13
19 but prior to being jumped in, "Lobo" told him the gang had to hold "mass" to decide whether
20 they would jump him in (Tr. 1528–29).[4]  The statement served to inform a potentially new
21 initiate of the requirements to join the gang's ranks and accordingly furthered the conspiracy by
22 facilitating recruitment.  The statement also served to foster trust and cohesiveness among

---

[1] The indictment charges three separate conspiracies but they are overlapping in nature.  Therefore, for the sake of simplicity, this order will refer to "conspiracy" although there are three conspiracies charged.

[2] "Triste" is defendant Velasquez's alleged gang moniker.  "Magic" and "Slow" were identified as 20th Street clique members.  "Slow" was also identified as defendant Moris Flores — who was purportedly a leader of the gang in 2008.

[3] The evidence before and during trial established that "putting in work" means attacking or killing rival gang members.

[4] "Lobo" was identified as a 20th Street clique member.

2

1 Lobo's coconspirators by assuring them that a broader discussion amongst members would be
2 held before any decisions would be made regarding the admission of new members.

3 Witness Espinal also testified that defendant Erick Lopez told Lobo that he understood
4 why Lobo could not sleep well (Tr. 1546–47). This statement was made after Lobo expressed
5 concern that his fingerprints were on a CD that defendant Velasquez had used to attack a
6 Norteño. The statement furthered the conspiracy by keeping coconspirators abreast of a
7 damaging piece of evidence that tied the gang to a recently-committed crime. The statement also
8 served to offer comfort to a fellow coconspirator for a possible misstep.

9 Witness Espinal also stated that while he was in a holding cell at the federal building, a
10 group of individuals threatened to attack him and his family. With this backdrop, Witness
11 Espinal testified that Syco told defendant Herrera to tell Witness Espinal that he could not tell
12 others he was part of La Mara Salvatrucha because he was a "drop out" (Tr. 1681, 1790–92).[5]
13 As an initial matter, Syco's statement was transactional in nature and was not hearsay because it
14 was not admitted for the truth of the matter asserted. Nonetheless, even if the statement was
15 hearsay, it was made in furtherance of the conspiracy because it served to enforce the gang's rule
16 that only members in good standing could claim membership in the gang and served to remind
17 Witness Espinal of his tenuous status because he dropped out of the gang.

20 Dated: November 22, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

28 [5] "Syco" (also spelled as "Cyco" and "Psycho") has been identified as codefendant Marvin Carcamo, also a 20th Street clique member.

3